NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0006n.06
Filed: January 7, 2009

No. 07-6443

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| OLD REPUBLIC INSURANCE COMPANY, | ) | |
| | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| Plaintiff-Appellee, | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF KENTUCKY |
| v. | ) | |
| | ) | OPINION |
| UNDERWRITERS SAFETY AND CLAIMS, INC., | ) | |
| | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

Before: DAUGHTREY and GILMAN, Circuit Judges; MILLS, District Judge.[*]

RICHARD MILLS, District Judge. Gregory McCord, an employee of the City of Louisville, sustained a serious injury on the job in 1987. The City was self-insured up to a $250,000 retention limit for workers' compensation liability, and carried an excess-liability policy from Old Republic Insurance Company. In a 1998 proceeding, an administrative law judge ("ALJ") found that McCord was permanently

---

[*]The Honorable Richard Mills, United States District Judge for the Central District of Illinois, sitting by designation.

disabled. By 2004, the City had paid more than $44,000 of excess compensation above its retention limit. Old Republic was not provided notice of the McCord claim until 2004. Old Republic filed this declaratory judgment action, asserting that it should be relieved of its obligation to reimburse the City for the excess because the City and its third-party administrator, Underwriters Safety and Claims, Inc., had failed to provide notice of the McCord claim as required by the policy. Underwriters has been substituted for the City as the defendant in this case.

The district court held that before an insurance company may avoid liability on a claim because of late notice, Kentucky law requires the company to show a reasonable probability that it suffered prejudice as a result of the delay. Applying this rule, the court concluded that because Old Republic lost its right to participate in the defense of the McCord claim, it was prejudiced as a matter of law, regardless of whether Old Republic would in fact have participated or whether its participation could have affected its liability. Accordingly, the district court entered summary judgment in favor of Old Republic. For the reasons set forth below, we **reverse** the judgment of the district court and **remand** for a consideration of whether Old Republic was prejudiced because of the late notice.

## I. BACKGROUND

On March 9, 1987, McCord sustained a lower back injury during the course of his employment. The City voluntarily paid McCord temporary total disability benefits for eleven months from March 9, 1987 through February 1, 1988. On February 27, 1990, the ALJ ruled that McCord's period of temporary total occupational disability extended from March 9, 1987 to September 11, 1987. McCord was determined to have a 50% permanent partial disability. The ALJ further found: (1) McCord suffered a 12.5% disability as a result of the March 9 injury, which became the liability of the City; (2) McCord had a 25% pre-existing occupational disability which was non-compensable; and (3) he had an additional 12.5% disability which was determined to be due to the arousal of a dormant, non-disabling condition which became the liability of the state fund. The ALJ ordered the City to pay McCord $164.80 per week from March 9, 1987 to September 11, 1987, and thereafter the sum of $20.60 per week for 425 weeks. By the end of 1997, the total payments made to McCord because of his March 1987 work injury equaled $92,778.46. On April 30, 1998, an ALJ found McCord to be totally and permanently disabled.

By late July of 2004, when Old Republic received its first notice of the McCord claim, payments exceeding $250,000 had been made to McCord. Underwriters forwarded to Old Republic a request for reimbursement on the McCord claim in the amount of $44,178.12, representing the approximate amount by which payments of workers' compensation benefits exceeded the City's retention limit. Underwriters concedes that its notice to Old Republic was not contractually timely, though the parties dispute exactly how late the notice was.

The district court found that Old Republic was entitled to notice in 1988 based on Part 7(d)(4) of the policy, which provides that immediate notice shall be given in any case involving "disability for a period of nine months or more." However, it also determined that, pursuant to Kentucky law, Old Republic must show that it was prejudiced because of the late notice. The district court concluded prejudice did result from the late notice because Old Republic was exposed to liability without having its contractual right to participate in or control the investigation, defense, settlement and/or appeal of the McCord claim.

The district court entered judgment in favor of Old Republic, finding that the City, individually and by and through its third-party administrators, failed to comply

with the notice provisions of the policy.  This appeal followed.

## II. ANALYSIS

### (A)

This is a diversity action in which Kentucky law applies.  In applying Kentucky law, this Court follows the decisions of Kentucky's highest court.  *See Bailey Farms, Inc. v. Nor-Am Chemical Co.*, 27 F.3d 188, 191 (6th Cir. 1994) (citation omitted). "Where a state's highest court has spoken to an issue, we are bound by that decision unless we are convinced that the high court would overrule it if confronted with facts similar to those before us."  *Kurczi v. Eli Lilly and Co.*, 113 F.3d 1426, 1429 (6th Cir. 1997).  If the issue has not yet been addressed by the state supreme court, it is this Court's duty to anticipate how that court would rule.  *See Bailey Farms*, 27 F.3d at 191.

Insurance contracts must be liberally construed in the insured's favor.  *See Kentucky Farm Bureau Mut. Ins. Co. v. McKinney*, 831 S.W.2d 164, 166 (Ky. 1992). Moreover, a policy's "exceptions and exclusions should be strictly construed to make insurance effective."  *Id.* (citations omitted).  However, the Kentucky Supreme Court has cautioned:

> The rule of strict construction against an insurance company certainly does not mean that every doubt must be resolved against it and does not interfere with the rule that the policy must receive a reasonable interpretation consistent with the parties' object and intent or narrowly expressed in the plain meaning and/or language of the contract. Neither should a nonexistent ambiguity be utilized to resolve a policy against the company. We consider that courts should not rewrite an insurance contract to enlarge the risk to the insurer.

*St. Paul Fire & Marine Ins. Co. v. Powell-Walton-Milward, Inc.*, 870 S.W.2d 223, 226-27 (Ky. 1994) (citing *U.S. Fidelity & Guar. Co. v. Star Fire Coals, Inc.*, 856 F.2d 31 (6th Cir. 1988)).

(B)

Old Republic claims that the district court correctly determined pursuant to Part 7(d)(4) of the policy that notice was due in 1988, after nine months had passed and McCord had not returned to work. Underwriters acknowledges that notice was due, at the latest, in 1998 when the ALJ found that McCord was permanently disabled. Part 7(d)(5) of the policy provided that notice is due immediately in any case which involves "permanent total disability." Accordingly, the 2004 notice to Old Republic was late by at least six years.

We must determine whether, having established that notice was very late, Old Republic may escape liability under the policy. Underwriters asserts, and the district

court held, that Kentucky law requires Old Republic to demonstrate a reasonable probability that it suffered substantial prejudice as a result of the late notice. *See Jones v. Bituminous Casualty Corp.*, 821 S.W.2d 798, 803 (Ky. 1991) (holding that an insurance company may not avoid payment of a claim based on late notice unless it was reasonably probable that the insurer suffered substantial prejudice). Old Republic, however, argues that the Kentucky Supreme Court would not apply the *Jones* rule to the present case, but would instead distinguish excess-liability insurers from primary liability insurers. *See Hiscox Dedicated Corporate Member Ltd. v. Wilson*, 246 F. Supp. 2d 684 (E.D. Ky. 2003) (holding that, under Kentucky law, an equine-property insurer did not have to demonstrate probable prejudice resulting from an insured's failure to comply with a notice requirement in the policy). Accordingly, in this case involving an excess policy, Old Republic argues that Kentucky law does not require it to show that it probably suffered prejudice when Underwriters failed to provide timely notice of the McCord claim.

There is no Kentucky Supreme Court decision which extends the prejudice requirement to excess liability policies. Thus, we must predict the future development of Kentucky law. The reasoning in *Jones* is instructive. The court in

*Jones* discussed four factors to support its shift from the traditional "no prejudice" rule to the modern view requiring insurance companies to show prejudice. *See Jones*, 821 S.W.2d at 801-03. We believe that these factors would lead the Kentucky Supreme Court to extend the *Jones* rule to the excess-liability context, and therefore reject Old Republic's assertion that it need not make any showing of prejudice. We turn now to the factors discussed by the court in *Jones*.

(C)

First, the court noted that many modern insurance policies are contracts of adhesion. Such contracts have two notable characteristics: disparate levels of sophistication between the parties and a one-sided "take it or leave it" form that does not allow for even-handed bargaining. *See Jones*, 821 S.W.2d at 801-02. Unlike the typical individual consumer in *Jones*, the City and Underwriters (and its predecessor third-party administrators) are sophisticated parties. Nonetheless, the policy in this case was apparently a pre-printed form contract that did not include individually bargained-for provisions. The policy in *Hiscox*, by contrast, contained at least one bargained-for provision specific to the individual insured. *See Hiscox*, 246 F. Supp. 2d at 692.

Second, the court in *Jones* cited the doctrine of reasonable expectations. Kentucky law requires "an unequivocally conspicuous, plain and clear manifestation of the company's intent to exclude coverage" to defeat the insured's expectation. *Woodson v. Manhattan Life Ins. Co. of N.Y.*, 743 S.W.2d 835, 839 (Ky. 1987) (citation omitted). The court in *Jones* stated that the policy in that case, while plainly including a notice requirement, did not make clear to an "ordinary insurance consumer" that coverage could be denied if notice was not timely provided. *See Jones*, 821 S.W.2d at 802. Old Republic focuses on the "ordinary consumer" language in *Jones*, suggesting that the doctrine of reasonable expectations does not apply to sophisticated insurance consumers in the excess-liability context. To the extent that this factor can be examined in that context, Old Republic contends that when the expectations of an excess insurer are balanced against those of a sophisticated consumer, it favors neither party. However, we believe that sophisticated consumers may also rely on reasonable expectations as to the consequences of a failure to provide notice. The policy in *Hiscox* expressly conditioned coverage on notice. 246 F. Supp. 2d at 690. The policy in this case, like the one in *Jones*, does not.

The third factor discussed in *Jones* relates to public policies underlying statutorily mandated insurance coverage. The insured in that case owned a mine and was required by law to carry the policy at issue. The court reasoned that defeating coverage under the policy solely because of a lack of notice would interfere with the public policy underlying the statutory mandate. *See Jones*, 821 S.W.2d at 802. Although Old Republic asserts that the City was not required by law to carry an excess-liability policy, Kentucky law does in fact require self-insuring employers to carry such insurance. *See* 803 Ky. Admin. Regs. 25:021 § 5 (2008). Old Republic argues that in the excess-liability context, unlike in the primary-liability context, there is no vulnerable third party who may suffer if it does not pay a claim. However, Kentucky law requires the purchase of excess-liability insurance to protect the third-party employees in the event that their self-insured employers cannot meet their right to compensation.

The final factor is the possibility that if an insurer may avoid payment on claims where lack of notice created no prejudice, then the premiums paid by the insured will constitute a windfall to the insurer. *See Jones*, 821 S.W.2d at 802-03. Although Old Republic asserts that the *Jones* rationale was fact-specific and has no

bearing in the excess-liability context, we see no reason why it would not also apply to excess-liability policies. Without some showing of prejudice, allowing Old Republic to escape its contractual obligation on the notice technicality would result in a windfall to the company.

(D)

After weighing each of the factors relied on by the Kentucky Supreme Court in *Jones*, we conclude that the court's reasoning supports extension of the rule articulated in that case to excess-liability cases such as this. Accordingly, we agree with the district court's finding that Old Republic must show a reasonable probability that it was substantially prejudiced by the late notice. The district court went on to conclude that Old Republic was not required under *Jones* to establish that "it would have actually become involved in resolving the McCord claim and that its involvement could have effected a different result." Instead, the court held that "Old Republic's undisputed loss of its contractual right to [to participate in defense of the claim] is conclusive" in establishing prejudice. In so doing, the court discounted as "irrelevant" Underwriters' evidence that Old Republic, in more than 1,700 cases, had *never* associated in or taken over the defense of any workers' compensation claim.

We believe that something more than the loss of the right to participate in defense of the claim is necessary in order to show prejudice. Prejudice requires "injury or damage." *See* Merriam Webster's Collegiate Dictionary 919 (10th ed. 1997). At the very least, a showing of prejudice requires the insurer to point to some reasonable possibility that the outcome would have been different had it received notice. One treatise describes the prejudice rule as follows:

> In proving prejudice as a result of a delay in providing notice, it has been stated that an insurer is not required to show precisely what outcome would have been had timely notice been given to make [a] showing of substantial prejudice. However, an insurer must show the precise manner in which its interests have suffered, meaning that an insurer must show not merely the possibility of prejudice, but, rather, that there was a substantial likelihood of avoiding or minimizing the covered loss, such as that the insurer could have caused the insured to prevail in the underlying action, or that the insurer could have settled the underlying case for a small sum or smaller sum than that for which the insured ultimately settled the claim.

Russ & Segalla, 13 Couch on Insurance, § 193:29.

The *Jones* rule would be completely eviscerated if an insurer could simply point to the lack of notice itself to establish prejudice, even where, as here it presents no evidence to suggest that notice would have made any difference. Old Republic contends that prejudice should be presumed if the notice is between six and sixteen

years late. However, we decline to hold that substantial prejudice should be conclusively presumed in cases where the notice is extremely late.

Based on the foregoing, we will remand the matter to the district court for reconsideration of whether a reasonable trier of fact could conclude that, with timely notice from Underwriters, there is a reasonable probability that Old Republic might have achieved a more favorable resolution of the McCord claim. If the district court determines that a genuine issue of material fact exists on this issue, then the question of "substantial prejudice" should be submitted to a jury. *See Jones*, 821 S.W.2d at 803 ("If the evidence on [the substantial prejudice] issue is in conflict, or if reasonable minds could differ as to what the evidence proves in this regard, the issue is one for the trier of fact.").

### III. CONCLUSION

For all of the reasons set forth above, we **reverse** the judgment of the district court and **remand** the case for further proceedings as set forth in this opinion.

*Old Republic Insurance Co. v. Underwriters Safety and Claims, Inc.*
*No. 07-6443*

MARTHA CRAIG DAUGHTREY, Circuit Judge, concurring in part and dissenting in part.

I agree with the majority's prediction that, if confronted with the dispositive legal issue in this late-notice case, the Kentucky Supreme Court would extend to excess-liability insurers such as the defendant the rule in <u>Jones v. Bituminous Casualty Corporation</u>, 821 S.W.2d 798, 803 (Kentucky. 1991), that requires a demonstration of prejudice. On the other hand, I also concur in the district court's determination that the notice in this case was 16 years late. Given the extreme lateness of notice by plaintiff – in the face of the clear import of Part 7(d)(4) of the agreement, as well as signs along the way that excess liability might well arise – it seems only fair that the court impose a rebuttable presumption that the delay caused prejudice and let the plaintiff bear the burden of establishing that it should be allowed to recover despite its obvious failure to honor the terms of its contract with the defendant.

For that reason, I, too, would remand but with slightly different directions to the district court.